UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZAED QUITUQA,<br>      Plaintiff,<br><br>  v.<br><br>CAROLYN COLVIN,<br>Acting Commissioner of Social Security,<br><br>      Defendant. | Civ. No. 15–7985 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

  Zaed Quituqa brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is REVERSED and REMANDED.

**I. BACKGROUND**

  Quituqa, now in his late 20's, is a former apprentice electrician. On July 8, 2011, he was electrocuted by a high-tension line and was thrown six feet to the ground. He had no pulse when emergency medical services arrived at the scene of the accident, and he remained in a coma for three days afterwards. He has not worked since his accident.

  Quituqa filed a DIB application on April 13, 2012, claiming that injuries sustained as a result of his accident prevented him from engaging in substantial gainful work. His application was initially denied on July 3, 2012, and then on reconsideration on January 29, 2013. On May 23, 2014, following a hearing at which Quituqa testified and was represented by counsel, an ALJ found that Quituqa was not under a disability as defined in the Social Security

1

Act from any time between July 8, 2011 and December 31, 2013, the date last insured. The Appeals Council denied his request for review on September 10, 2015, rendering the ALJ's decision the final decision of the Commissioner. Quituqa now appeals from that decision.

## II. DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). He must also show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

### A. Standard of Review

This Court exercises a plenary review of all legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). This Court adheres to the ALJ's findings so long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is

2

> applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record substantial evidence which, on the whole, establishes that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000); *see also Bantleon v. Comm'r of Soc. Sec.*, 2010 WL 2802266, at *13 (D.N.J. July 15, 2010). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 Fed. Appx. 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

3

### B. The Five Step Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulations.

**Step one:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step five:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

### C. The ALJ's Decision

ALJ Feuer determined that Quituqa's date last insured was December 31, 2013, and that the alleged disability onset date was July 8, 2011. The ALJ further determined that Quituqa was not under a disability, as defined in the Social Security Act, at any time during that period. The ALJ's specific step-wise findings may be summarized as follows. (R. 14) [1]

At step one, ALJ Feuer found that Quituqa had not engaged in substantial gainful employment between the alleged onset date and the date last insured. (R. 25)

At step two, the ALJ identified Quituqa's "shoulder [injury], stroke, and depression" as severe impairments (*Id.*)

At step three, the ALJ determined that Quituqa's impairments did not meet or medically equal the severity of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A §§ 1.02 (major dysfunction of joint); 1.04 (disorders of the spine); and 12.04 (depressive, bipolar, and related disorders). (R. 25-26)

At step four, ALJ Feuer determined Quituqa's residual functional capacity ("RFC").

> **5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 202. 1567(b)[2] except he would need an option to sit or stand at his will. The claimant can perform non-assembly line work that requires no lifting above shoulder level on his left side. He is limited to performing simple, routine and repetitive tasks and making simple work related decisions and with no contract with the general public**

---

[1] Pages in the administrative record (ECF no. 6) are cited as "R. __."

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, a "good deal" of walking or standing, or some pushing and pulling of arm or leg controls whiles sitting. 20 C.F.R. 1567(b).

5

**and only occasional contact with co-workers and supervisors.**

In light of Quitqua's RFC restrictions, the ALJ found that he would not be able to perform his past relevant work as an electrician apprentice. (R. 27-30)

At step five, based on the testimony of a vocational expert, the medical-vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, and Quituqa's age, education, work experience, ALJ found that Quituqa, within his RFC restrictions, was capable of performing other work that existed in significant numbers in the national and regional economy. Those jobs, the ALJ ruled, included: microfilm mounter, ticketer, and labeler. (R. 31-32)

### D. Analysis

Quituqa contends on appeal that the ALJ's decision is not supported by substantial evidence. He attacks the ALJ's decision on three primary grounds: (1) the ALJ failed to consider fully and fairly all of Quituqa's impairments in the steps two and three; (2) the ALJ failed to consider the findings of a number of treating physicians and consultants; and (3) the ALJ failed to consider Quituqa's subjective complaints. He also argues that the ALJ's RFC and step five findings were incorrect insofar as they were based on errors (1)-(3). Because I will remand this matter based on the first error, I do not reach those other, dependent grounds.

At step two, the ALJ considered only Quituqa's "shoulder, stroke, and depression" and "seizures and hip pain." ALJ Feuer failed to consider that Quituqa suffered from other impairments, including anxiety, post-traumatic stress disorder, traumatic brain injury, and back injuries. Step two is a preliminary step at which only *de minimis* claims based on "slight abnormalities" may be screened out. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360-61 (3d Cir. 2004) ("The burden placed on an applicant at step two is not an exacting one. Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight

6

abnormalities which would have no more than a minimal effect on an individual's ability to work.'") (citations omitted).

An ALJ's findings at step two will be upheld if they are supported by substantial evidence. *Id.* I agree with Quituqa, however, that the ALJ overlooked a number of impairments for which there exists a significant amount of evidentiary support. The ALJ did not consider, for example, that Quituqa suffered from a cerebral hemorrhage as a result of his accident, which may have contributed to a number of his alleged cognitive impairments. (*E.g.*, R. 664, 668) Similarly, despite a number of treatment records and indicating that Quituqa suffered from a lack of impulse control, restlessness, and had difficulty sleeping, the ALJ did not consider whether he may be impaired by post-traumatic stress or anxiety disorder. (*E.g.*, R. 286-88, 476-77, 650, 786-799) And while the ALJ concluded that Quituqa's back injuries did not reach listing-level severity in step three, the ALJ failed to note in step two that a number of diagnostic and treatment records showed that he had a compression fracture at T6, herniated discs at L5-S1, and was hospitalized for back pain in April 2012. (R. 291-93, 642-43)[3] There is, in short, evidence in the record to support Quituqa's alleged brain injury, back pain, and non-depressive mental disorders. The ALJ should have considered whether that evidence surpasses the slight abnormality threshold at step two.

The ALJ's analysis might have been impaired by the presentation of the evidence of disability in somewhat piecemeal fashion. In his initial DIB application, Quituqa claimed to be disabled due to "back, shoulder, hip pain, electrocuted, stroke, seizure" and reported that he "suffered from so much pain and anxiety that [he] can't sleep," "gets ag[]itated easily", and "loses his

---

[3] This error, taken alone, might be harmless; the ALJ indeed may have accommodated Quituqa's back pain in the RFC determination by limiting him to light work jobs that would allow him to sit or stand at will. (*E.g.* R. 70 (Quituqa testifying that he could not sit for two hours because of lower back and leg pain)) But because the necessary discussion of the evidence documenting Quituqa's back pain does not appear in the ALJ's opinion, there are not sufficient findings for this Court to exercise its function of review.

7

temper." (R. 180-97) Before the record closed, Quituqa also sent a letter to ALJ Feuer noting that he had suffered a hemorrhage as a result of his accident, exhibited signs of post-traumatic stress disorder, and had inability to control his aggression. (R. 333-34) The ultimate issue, of course, relates to the aggregate effect of the applicant's impairments. On remand, the process may benefit from having the evidence presented all at once, in a package.

On remand, the ALJ may wish to consider the (1) treatment records of Dr. Bradford Parsons, M.D., who provided s surgical consultation to Quituqa concerning his left shoulder (R. 770-74); (2) the physicians and consultants at the Rothman Institute, who provided Quituqa with physical therapy (R. 800-35); and (3) the testimony of Quituqa's mother, Njoud Abidah, who summarized the changes in her son's personality, social life, and interests following the accident. (R. 79-84). The ALJ, within his or her discretion, may also wish to consider the report of Dr. E. Megariotis, M.D., who authored a surgical consultation in August 2014, to the extent that opinion relies on treatment records generated between July and December 2013. (R. 16-17)

For these reasons, the matter will be remanded to the ALJ for further proceedings in which the ALJ shall make the necessary step two findings, as detailed above. If substantial evidence indicates that these impairments are more than slight abnormalities, then they should be evaluated under the appropriate listing at step three, and so on, at each step with sufficient findings for this Court to exercise its function of review.

### III. CONCLUSION

For the reasons stated above, the ALJ's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion.

Dated: February 3, 2017

**KEVIN MCNULTY**
**United States District Judge**

8